T.C. Summary Opinion 2009-150

UNITED STATES TAX COURT

KENNETH D. AND TRUDI A. WOODARD, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12463-07S.              Filed September 28, 2009.

Kenneth D. and Trudi A. Woodard, pro se.

Kristin Timmons, for respondent.


PANUTHOS, Chief Special Trial Judge:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.[1]  Pursuant to
section 7463(b), the decision to be entered is not reviewable by

_____

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code, and Rule references are to the Tax Court
Rules of Practice and Procedure.

any other court, and this opinion shall not be treated as precedent for any other case.

Petitioners filed a joint Federal income tax return for taxable year 2004. Respondent determined that petitioners failed to include in income $150,000 in distributions from individual retirement accounts (IRA) in petitioner Kenneth Woodard's name, and respondent issued a notice of deficiency determining a $27,606 deficiency and a $5,521 accuracy-related penalty pursuant to section 6662(a).

The sole issue for decision is whether petitioner Kenneth Woodard is liable for the accuracy-related penalty.[2]

## Background

The parties have stipulated some of the facts, and we so find. We incorporate the stipulation of facts and the attached exhibits by this reference. When they filed the petition, petitioners resided in Minnesota.

Trudi Woodard was born in 1954, and Kenneth Woodard (hereafter Mr. Woodard) was born in 1955. Petitioners married in 1980, and in 2009 a Minnesota court entered a decree dissolving their marriage.

---

[2] After petitioners filed the petition, petitioner Trudi Woodard requested relief under sec. 6015, commonly referred to as innocent spouse relief. The Internal Revenue Service granted her request for complete relief from joint liability under sec. 6015(b). Petitioner Kenneth Woodard does not dispute that Trudi Woodard is entitled to this relief, and he concedes that the IRA distributions are taxable income.

Mr. Woodard holds an undergraduate degree in accounting. He earned a master's of business administration from Harvard Business School. He was a certified public accountant (C.P.A.), but he allowed his C.P.A. license to lapse. He worked as a computer programmer for 20 or more years before trial.

On November 5, 2004, the Vanguard Group (Vanguard) distributed $50,000 to Mr. Woodard from his Vanguard contributory IRA. On November 22, 2004, Vanguard distributed $50,000 to him from his Vanguard rollover IRA. On December 14, 2004, Vanguard converted $50,000 from the contributory IRA to a Roth IRA. On a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., Vanguard reported two $50,000 distributions from the contributory IRA and one $50,000 distribution from the rollover IRA.

Vanguard sent distributions totaling $100,000 to Mr. Woodard.[3] Mr. Woodard deposited that amount into his personal checking account in 2004.

In February 2005 Mr. Woodard wired funds to Amanda M. Mahn pursuant to demand notes and statutory mortgage documents executed on February 4 and 11, 2005, by Ms. Mahn as debtor and Hunter Financial, LLC, as lender. Mr. Woodard promptly recorded

---

[3] The $50,000 converted from the contributory IRA to a Roth IRA apparently remained invested in a Roth IRA at Vanguard.

the mortgages in Minnesota.  The loan documents specified interest at 16 percent.

At the time of recordation, a prior mortgage on the same property funded in January 2005 by Lake State Federal Credit Union (Lake State) had not been recorded.  On September 13, 2005, Mr. Woodard filed articles of organization to establish Hunter Financial, LLC (hereafter Hunter Financial), as a business entity registered with the State of Minnesota secretary of state.

After Lake State failed to receive mortgage payments from August through November 2005, it discovered that its mortgage had not been recorded, that the warranty deed on the property had been altered to add Ms. Mahn's name, and that the altered warranty deed had been used to obtain mortgage financing from Hunter Financial.  On December 5, 2005, Lake State commenced a foreclosure action against the property, notifying all lienholders and joining them as defendants.

The Minnesota district court granted summary judgment to Lake State against Hunter Financial, finding the alleged mortgage between Hunter Financial and Ms. Mahn void.  In an unpublished opinion the Minnesota Court of Appeals affirmed the summary judgment, stating that a mortgage must be delivered to the mortgagee to be valid and that a nonexistent legal entity cannot accept delivery of a mortgage.  Accordingly, because Hunter Financial was not registered until September 2005, it could not

have taken delivery in February 2005; thus, the mortgage granting it a property interest in February 2005 was void.[4] <u>Lake State Fed. Credit Union v. Tretsven</u>, No. A07-1542 (Minn. Ct. App. July 15, 2008) (slip op. at 6).

Trudi Woodard was not involved with Mr. Woodard's finances and was not aware that he had taken any distributions from his IRAs in 2004. Mr. Woodard prepared the couple's joint Federal income tax return for 2004, but he did not report any of the $150,000 in IRA distributions.

Respondent issued a notice of deficiency determining a $27,606 deficiency and a $5,521 accuracy-related penalty, both resulting from the $150,000 in unreported distributions.[5] As indicated, <u>supra</u> note 2, Mr. Woodard concedes that the distributions are taxable income in 2004, but he challenges the section 6662(a) accuracy-related penalty.[6]

---

[4] Mr. Woodard alleges that Ms. Mahn secured other mortgages on the same property, and the record reflects that Ms. Mahn was convicted of bank fraud in 2006.

[5] Respondent did not determine an additional tax under sec. 72(t). Although respondent's counsel indicated that the additional tax should apply to the $100,000 Vanguard distributed to Mr. Woodard, she did not assert an additional deficiency. See sec. 6214(a).

[6] Mr. Woodard sought to but ultimately did not file a motion to allow him to claim a deduction for a theft loss for the amount he wired to Ms. Mahn to fund the private mortgages. Mr. Woodard did not fund these loans until 2005. Thus, a theft or bad debt could not have occurred until 2005 or later, and a deduction therefore would not be allowable for taxable year 2004. Only
(continued...)

## Discussion

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to negligence or disregard of rules or regulations or to a substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return. Sec. 6662(d)(2)(A).

By virtue of section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty. To meet this burden, respondent must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once

---

[6](...continued) taxable year 2004 is before the Court. Accordingly, Mr. Woodard's loss after taxable year 2004 does not affect the issue to be decided herein.

respondent meets this burden of production, Mr. Woodard must come forward with persuasive evidence that respondent's determination is incorrect. See Rule 142(a); Higbee v. Commissioner, supra at 446.

Respondent satisfied his burden of production under section 7491(c) because the record shows that petitioners substantially understated their income tax for the year in issue. See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 446.

Section 6664 provides a defense to the penalty if a taxpayer establishes that there was reasonable cause for the underpayment and that he acted in good faith. Sec. 6664(c)(1); Neonatology Associates P.A. v. Commissioner, 115 T.C. 43, 98 (2000), affd. 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability, including reliance on the advice of a tax return preparer. Id. An honest misunderstanding of fact or law that is reasonable considering the taxpayer's education, experience, and knowledge may indicate reasonable cause and good faith. Id. Mr. Woodard bears the burden of proving that he acted with reasonable cause and in good faith. See sec.

6664(c)(1); see also Higbee v. Commissioner, supra at 446; sec. 1.6664-4(a), Income Tax Regs.

Mr. Woodard explained that he thought he had a self-directed IRA and that he intended to reinvest the $100,000 in private mortgages. He searched the Internet for information about self-directed IRAs, and he followed advice he found on line. He deposited the $100,000 into his personal checking account and wired the funds from that account to Ms. Mahn as mortgagor.

As indicated supra note 2, Mr. Woodard agrees that receiving the distribution from Vanguard and depositing the money into his personal checking account in November 2004, then paying the funds from that account to the mortgagor in February 2005 did not effect a rollover of the retirement assets that would qualify for continuing deferral of taxation under section 408(d)(3). He did not address the Roth IRA conversion at trial, and he concedes that he is liable for income tax on the entire $150,000 distributed by Vanguard. However, he argues that he intended that the $100,000 remain in a self-directed IRA, that this is a complicated area of the law, that he never intended to defraud the Government, that he reaped no personal benefit from the money (all of which he lost when it was stolen by Ms. Mahn, who was then incarcerated for fraud), and finally that he should not be liable for the accuracy-related penalty because he followed Internet instructions in managing his self-directed IRA.

Mr. Woodard makes no argument relative to his having reasonable cause and acting in good faith in not reporting income from his $50,000 conversion from a traditional IRA to a Roth IRA. Accordingly, we sustain the accuracy-related penalty as to the portion of the underpayment attributable to this unreported income.

Mr. Woodard asks the Court to accept that his research on the Internet using the Google search engine provided him with reasonable cause for the position he took when filing his 2004 Federal income tax return; to wit, not reporting IRA distributions he commingled with other funds by depositing the distributions into his checking account because he later invested those funds in private mortgages. Mr. Woodard has not provided the Court with any information about the sources of the information he found on the Internet.

Good-faith reliance on advice from an independent, competent professional as to the tax treatment of an item may meet the reasonable cause requirement. Neonatology Associates, P.A. v. Commissioner, supra at 98; sec. 1.6664-4(b), Income Tax Regs. A taxpayer must act with ordinary business care and prudence to claim reasonable cause. Neonatology Associates, P.A. v. Commissioner, supra at 98.

Mr. Woodard claims that he relied on information found on unspecified Web sites written by unidentified individuals or

organizations.  From the record, it is not clear that he questioned the provenance or accuracy of the information he found through the Google search engine.[7]  Without knowing the sources of the information, it is impossible for the Court to determine that those sources were competent to provide tax advice. Accordingly, we cannot conclude that Mr. Woodard exercised ordinary business care and prudence in selecting and relying upon the information he found on line.  As a result, we find that he has not shown reasonable cause for failing to report the distributions from his IRA on the 2004 Federal income tax return. Not having found reasonable cause, we need not consider whether Mr. Woodard acted in good faith.  See sec. 6664(c)(1).

Respondent's determinations including the accuracy-related penalty will be sustained as to Mr. Woodard.  The parties agree that Trudi Woodard is entitled to complete relief from liability for taxable year 2004, and our decision will reflect their agreement.

<u>An appropriate order and decision will be entered</u>.

---

[7] We recognize that petitioner had not worked as an accountant for years before filing the 2004 return, but his accounting degree, M.B.A., and C.P.A. training, no matter how stale, undoubtedly taught him what sources could be relied upon as definitive; such as, for example, the Internal Revenue Code and the income tax regulations, both of which are readily available on the Internet.